IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DARRYL P. CONNELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO. _____ |
| METROPOLITAN ATLANTA RAPID | ) | |
| TRANSIT AUTHORITY, and | ) | |
| CHERYL KING, | ) | JURY TRIAL REQUESTED |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiffs set forth the following claims for relief:

Jurisdiction and Venue

1.

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981, asserted via 42 U.S.C. § 1983.

2.

The subject matter jurisdiction of this Court is conferred by 28 U.S.C. §§ 1331, 1343(a), 2201 and 2202, by Title VII, and under principles of ancillary jurisdiction.

3.

Venue is proper in this district under 28 U.S.C. § 1391(b).

The Parties

4.

Plaintiff is a citizen of the United States and a former employee of the Defendant. Plaintiff is Caucasian.

5.

Defendant Metropolitan Atlanta Rapid Transit Authority ("MARTA") is an "employer" within the meaning of Title VII.

6.

MARTA is a local governmental authority and is subject to suit under 42 U.S.C. § 1983.

7.

Defendant King was employed as MARTA's Assistant General Manager of Planning at all times material to this Complaint. King is sued in her individual capacity.

## Exhaustion Of Administrative Remedies

8.

Plaintiff properly exhausted his administrative remedies under Title VII by filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  The EEOC has issued a Notice of Right to Sue, and this lawsuit is timely filed.

## The Underlying Facts

9.

Plaintiff was employed by MARTA from August 19, 2002 through his termination on September 21, 2009.  Plaintiff was initially hired as Manager of Property Development.  In March of 2006, because of Plaintiff's success and considerable achievements, Plaintiff was promoted to Director of Transit Oriented Development & Real Estate.

10.

Plaintiff was terminated by King, who was his recently-appointed supervisor; King had been Plaintiff's supervisor (and a MARTA employee) less than a year when she fired him.

11.

During his more than six years at MARTA prior to King's arrival, Plaintiff worked under a total of four supervisors and earned consistently high evaluations.

12.

Plaintiff's last annual evaluation Plaintiff received before King's arrival contained an overall rating of "Exceptional," MARTA's highest possible rating.

13.

The high ratings Plaintiff earned came from a diverse group of evaluators. Three of Plaintiff's supervisors had been African American while one was Hispanic. The supervisor who gave Plaintiff his last annual evaluation ("Exceptional") was an African American female.

14.

When she became Plaintiff's supervisor, King introduced considerations of race into both her communications and management decision-making.

15.

Mr. King repeatedly and explicitly referred to herself as a "mean black bitch." King used this expression both in group meetings and in a private conversation with Plaintiff.

16.

In response to Plaintiff's EEOC charge, MARTA later admitted to King's use of the expression "mean black bitch," but defended her "phraseology" because, supposedly, "the statement was not directed to [Plaintiff] or any other individual employee."

17.

King treated Plaintiff less favorably than African Americans. She was hostile, demeaning, and condescending toward Plaintiff, while treating her African American subordinates with respect.

18.

In a meeting held June 15, 2009, King told Plaintiff she "had complaints" that he was arrogant and did not return phone calls. Plaintiff asked King to provide some details about who had made these "complaints," or what he had done to provoke them. King refused to answer.

19.

Plaintiff believed that King's accusations were both unfounded and racially motivated. He felt they were unfounded because, among other things, they varied so dramatically from the consistently positive reviews he had received from all

four of King's predecessors, all of whom would have been charged with bringing such problems to his attention.

20.

Plaintiff believed King's accusations were racially motivated because, among other things, he had been physically present during King's "mean black bitch" remarks, and he had personally observed how she treated his African American counterparts more favorably.

21.

Plaintiff told King that he intended to lodge a complaint with MARTA's Office of Diversity and Equal Opportunity ("DEO").  Plaintiff also informed King that he intended to retain legal counsel.

22.

The DEO is the agency within MARTA charged with assuring that decisions at MARTA are made "without regard for race."

23.

Immediately after the June 15 meeting, King began trying to manufacture a reason to fire Plaintiff.  She drafted a memorandum to Plaintiff, supposedly "summarizing" their conversation in a manner that made Plaintiff appear

–6–

uncooperative, but never sent it to Plaintiff. She examined Plaintiff's job history in hopes of finding some serious weakness in her performance that she could exploit, but came up with nothing.

24.

Lacking any justification, but determined to terminate Plaintiff anyway, King eventually just went ahead and fired him. King reported to the Georgia Department of Labor that Plaintiff had been terminated because "his services were no longer needed."

25.

Six months later, in response to Plaintiff's EEOC charge, MARTA changed its supposed reason for terminating Plaintiff. MARTA submitted a formal position statement to the EEOC, claiming that King terminated Plaintiff because of his supposed "aversion to being managed [by her] and his poor interpersonal skills."

26.

At all times material to this Complaint, and while engaging in all of the conduct giving rise to Plaintiff's claims, the Defendants acted under color of state and local law.

27.

Defendant King made the decision to terminate Plaintiff.  King terminated Plaintiff using authority to do so delegated to her by MARTA.

28.

Defendant King's decision to terminate Plaintiff was not subject to review, and was not reviewed, by any higher MARTA official or authority.  King's decision was final.

29.

In its response to Plaintiff's EEOC charge, Defendant stated that King "determined" the alleged reason for Plaintiff's termination, and that "King terminated the [Plaintiff].

30.

Defendant King possessed, and exercised, final decision making authority on MARTA's behalf with respect to Plaintiff's employment and with respect to Plaintiff's termination.

31.

Defendant King was MARTA's final policymaking authority with respect to the Planning Department functions under her supervision including, specifically,

with respect to the Plaintiff's employment and his termination.  In terminating Plaintiff, King exercised final policymaking authority delegated to her by MARTA.

32.

In engaging in the unlawful conduct giving rise to this Complaint, the Defendants acted pursuant to an unofficial MARTA custom and policy of discriminating against Caucasians in management positions.  Defendants terminated Plaintiff, at least in part, in furtherance of this unofficial custom and policy.

33.

In discriminating and retaliating against Plaintiff, King acted willfully, wantonly, and intentionally to harm Plaintiff and his federally protected rights. Additionally and in the alternative, King acted with reckless disregard for Plaintiff and his federally protected rights.

### COUNT I - Title VII Discrimination
### (Defendant MARTA only)

34.

Plaintiff incorporates by reference all of the preceding paragraphs of the complaint.

35.

Race was a factor in MARTA's decision to terminate Plaintiff.

36.

MARTA violated the Plaintiff's rights under Title VII by terminating Plaintiff on account of his race.

37.

Plaintiff is entitled to an award of back pay and benefits, compensatory and punitive damages, injunctive relief, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

## **COUNT II - Title VII Retaliation**

## **(Defendant MARTA only)**

38.

Plaintiff incorporates by reference all of the preceding paragraphs of the complaint.

39.

MARTA terminated Plaintiff in retaliation for opposing race discrimination in employment, in violation of the anti-retaliation provisions of Title VII.

40.

MARTA violated the Plaintiff's rights under Title VII by terminating Plaintiff in retaliation for protected opposition activity.

41.

Plaintiff is entitled to an award of back pay and benefits, compensatory and punitive damages, injunctive relief, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

## **COUNT III – Section 1981 Discrimination**

## **(All Defendants.  Asserted via 42 U.S.C. § 1983)**

42.

Plaintiff incorporates by reference all of the preceding paragraphs of the complaint.

43.

Defendants violated the Plaintiff's rights under 42 U.S.C. § 1981 ("Section 1981") by terminating Plaintiff on account of his race.

44.

Plaintiff's Section 1981 claim is actionable under 42 U.S.C. § 1983.

45.

Plaintiff is entitled to an award of back pay and benefits, compensatory and punitive damages, injunctive relief, attorney's fees, and all other appropriate damages, remedies, and other relief available under Section 1981 and all federal statutes providing remedies for violations of 42 U.S.C. § 1981.

## **COUNT IV – Section 1981 Retaliation**

## **(All Defendants.  Asserted via 42 U.S.C. § 1983)**

46.

Plaintiff incorporates by reference all of the preceding paragraphs of the complaint.

47.

Defendant terminated Plaintiff in retaliation for opposing race discrimination in employment, in violation of the anti-retaliation provisions of Section 1981.

48.

Plaintiff's Section 1981 claim is actionable under 42 U.S.C. § 1983.

49.

Defendant violated the Plaintiff's rights under Section 1981 by terminating Plaintiff in retaliation for protected opposition activity.

50.

Plaintiff is entitled to an award of back pay and benefits, compensatory and punitive damages against Defendant King, injunctive relief, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Section 1981.

## Demand for Judgment

Plaintiff requests that the Court:

(a) adjudicate and declare that Defendant has violated the rights of the Plaintiff under the federal statutes listed above;

(b) permanently enjoin Defendant from violating in the future the rights of the Plaintiff under any of the federal statutes listed above;

(c) award the Plaintiff appropriate back pay, including reimbursement for lost pay and benefits in amounts to be shown at trial;

(d)     award the Plaintiff prejudgment interest as required by law;

(e)     award the Plaintiff compensatory damages for emotional pain and suffering and punitive damages;

(f)     award the Plaintiff punitive damages as against Defendant King;

(g)     award the Plaintiff the expenses of this litigation, including attorney's fees, expert witness fees, costs and disbursements; and

(h)     grant such additional relief as may be just.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a jury trial on all issues triable by jury.

Respectfully submitted,


s/ Daniel M. Klein
Georgia Bar No. 425037
dmklein@buckleyklein.com
Steven E. Wolfe
Georgia Bar No. 142441
sewolfe@bckleyklein.com

BUCKLEY & KLEIN, LLP
Promenade II, Suite 900
1230 Peachtree Street NE
Atlanta, Georgia  30309
Telephone: 404-781-1100
Facsimile:  404-781-1101

Attorneys for Plaintiff